IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| MICHAEL TOWNSEND, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:08-CV-079-A |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Michael Townsend, TDCJ #1311081, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Huntsville, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

On October 25, 2004, Townsend was indicted for attempted capital murder with a deadly

weapon in the 220th District Court of Comanche County, Texas, No. 04-10-02667-CCCR. (Clerk's R. at 2) Following a jury trial, the jury found Townsend guilty of the offense and assessed his punishment at forty years' confinement. (*Id.* at 28) The Eleventh District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused Townsend's petition for discretionary review. *Townsend v. Texas*, No. 11-05-00219-CR, slip op. (Tex. App.–Eastland June 8, 2006) (not designated for publication); *Townsend v. Texas*, PDR No. 1222-06. Townsend did not seek writ of certiorari. (Petition at 3) He filed a state application for writ of habeas corpus, raising the claims presented herein, which was denied by the Texas Court of Criminal Appeals without written order. *Ex parte Townsend*, Application No. WR-69,032-01, at cover. This federal petition followed.

The evidence at trial showed that on the night in question, Townsend, intoxicated on methamphetamine, engaged in a series of robberies and home evasions. He was ultimately located by law enforcement officers in a house, alone, and a shootout ensued. During the altercation, he received a gunshot wound and he wounded an officer, Deputy Robert Jolley, when he fired a shotgun from inside the residence through a door to the carport.

### D. ISSUES

Townsend raises the following claims:

(1) The jury was unconstitutionally empaneled;

(2) The prosecution failed to disclose exculpatory evidence that would have shown he is actually innocent of the offense;

(3) His confession was coerced;

(4) The prosecution was engaged in prosecutorial misconduct;

(5) There was no evidence to sustain his conviction; and

2

(6) He received ineffective assistance of trial counsel. (Petition at 7-8(a) & Memorandum in Support at 1-28)

### E. RULE 5 STATEMENT

Quarterman admits that Townsend has sufficiently exhausted his state court remedies relevant to the claims raised as required by 28 U.S.C. § 2254(b)(1)(a).

### F. DISCUSSION

#### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption of correctness applies to

3

both explicit findings of fact and those findings of fact implicit in the state court's mixed law and fact conclusions. *Valdez v. Cockrell*, 274, F.3d 941, 948 n.11 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as here, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963);[1] *Schartzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez*, 274 F.3d at 948 n.11; *Goodwin v. Johnson*, 132 F.3d 162, 183 (5th Cir. 1997).

### 2. *Unconstitutionally Empaneled Jury*

Townsend claims the jury was unconstitutionally empaneled because a venireperson, Ms. Williams, dishonestly concealed that she knew him and had conducted business at his body shop during voir dire; thus preventing the trial court and counsel from discovering actual bias. (Reporter's R., vol. 2, at 341) Apparently, in an effort to prove his assertion Townsend presented the affidavit of Doyce Glenn Nelson in the state habeas proceeding, wherein Nelson averred–

> In 2004 between the months of March and August while being in the office of Centex Auto Body, I remember Mr. Mike Townsend, owner of Centex Auto Body, introducing me to two females, one being an older lady and the other a younger lady. I also recollect Mr. Townsend sitting down at the computer to write

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

4

them an estimate. (State Habeas R. at 51)

This evidence is not only vague and ambiguous but wholly insufficient to show that the juror in question was, in fact, acquainted with Townsend and failed to answer honestly when asked if she knew Townsend. Even if the evidence were adequate to show the venireperson was acquainted with Townsend, Townsend has not shown that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial. *See Montoya v. Scott*, 65 F.3d 405, (5th Cir. 1995), *cert. denied*, 517 U.S. 1133 (1996).

### 3. *Brady Claim/Actual Innocence*

Townsend claims the state withheld exculpatory evidence in the form of the pellets, or "bird shot," that entered the body of Deputy Jolley, so the defense could conduct DNA and ballistics tests on them. Townsend argues the evidence would have been material and favorable to impeach Deputy Jolley's and others' testimony at trial on the issues of whether the pellets came from his weapon, versus friendly fire, and whether the shotgun was a lethal weapon at the distance between him and the deputy. Townsend asserts the absence of the evidence probably resulted in the conviction of an innocent man, and it is more likely than not that he would have been acquitted had the evidence been available at trial. (Memorandum in Support at 6-10: Pet'r Reply at 7)

There are three components of a *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Townsend has failed to satisfy one or more of these components. The testimony at trial reflects that of three pellets, one was removed from Deputy

5

Jolley's neck at the hospital during surgery, one remained in Deputy Jolley's head, and one Deputy Jolley removed himself. (Reporter's R., vol. 2, at 199) The two that were recovered were not preserved for evidentiary purposes. (State Habeas R. at 86) Thus, the state was not in possession of the pellets. Furthermore, the owners of the residence, who also owned the two twenty-gauge shotguns found on the living room floor of the residence, one of which was used to shoot Deputy Jolley, were out of town and no one other than Townsend was inside the residence at the time of the shooting. All of the spent shotgun shells were found inside the residence, and there is no evidence to suggest anyone other than Townsend used a twenty gauge shotgun or discharged a shotgun from inside the house toward the officer's direction on the carport. (Reporter's R., vol. 2, at 315-33; vol. 3, at 10-15) Finally, there was expert testimony that a shotgun is a firearm and is considered a deadly weapon capable of killing a person. (Reporter's R., vol. 2, at 303-04) Townsend has not demonstrated how the pellets recovered from Deputy Jolley would have been useful to him as impeachment evidence. It was the jury's role to evaluate the demeanor of the witnesses, determine their veracity, resolve conflicts in the testimony, and decide how much weight should be given their testimony. *See United States v. Millsaps,* 157 F.3d 989, 994 (5th Cir. 1998).

Absent a *Brady* violation, his actual innocence claim is meritless. Even had the jury considered the purported evidence, it cannot be said with any degree of certainty that it is more likely than not that no reasonable juror would have found Townsend guilty beyond a reasonable doubt in light of the other overwhelming evidence of his guilt. *See Schlup v. Delo,* 513 U.S. 298, 327 (1995).

## 4. Coerced Confession

Townsend claims his recorded statement given to a Texas Ranger hours later at the hospital

while disoriented with hallucinations, under the influence of drugs, and in pain and shock was not made knowingly, intelligently and voluntarily, in violation of his constitutional and state statutory rights. (Pet'r Memorandum at 11-16) He urges that, among other things, the sheer number of "unintelligibles" throughout the recording is proof of his disorientation. (Reporter's R., vol. 3, at 21-52)

Although coerced or involuntary confessions cannot be used as evidence to convict a defendant charged with a crime, the evidence, in large part, fails to support Townsend's allegations. *See Haynes v. Washington*, 373 U.S. 503, 513 (1964); *Ashcraft v. Tennessee*, 322 U.S. 143, 153-54 (1944). The Constitution does not forbid the police from offering a person an opportunity to volunteer evidence he wishes to reveal. The officer inquired as to how Townsend was feeling and that he would like to talk to Townsend. After advising Townsend of his rights, Townsend indicated it was alright if they talked. There is no indication that the officers exploited Townsend's pain and suffering with the purpose and intent of securing an incriminating statement or that Townsend's pain and suffering were so great as to affect his ability to give a voluntary confession. Townsend was well rested and appeared to be rational and in control of his mental faculties at the time. Medical treatment was not withheld, in fact treatment was apparently administered during the interrogation, and the interrogation was not prolonged. Furthermore, Townsend voluntarily took the witness stand during the course of his trial and voluntarily testified to essentially everything that was contained in his confession. He was certainly not convicted on the strength of his oral confession.

### 5. *Prosecutorial Misconduct*

Townsend claims the prosecution engaged in misconduct by leading the witnesses the entire trial, making false statements to the jury that they had only two options–to find him guilty of

attempted capital murder or aggravated assault on a peace officer, and giving personal opinions during closing argument. (Pet'r Memorandum in Support at 16-20)

Townsend does not state with specificity the circumstances under which the prosecution improperly questioned witnesses nor does he direct the Court to such instances in the record. Thus, the claim is inadequately briefed and is not addressed. His remaining claims are meritless. In the context of a habeas proceeding, alleged claims of prosecutorial misconduct during a state trial are reviewed to determine whether it so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Ortega v. McCotter,* 808 F.2d 406, 407 (5th Cir. 1987). To warrant habeas relief, improper conduct by a state prosecutor must be so prejudicial that it rendered the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *See e.g., Greer v. Miller,* 483 U.S. 756, 765 (1987); *Darden v. Wainwright,* 477 U.S. 168, 180-81 (1986); *Dowthitt v. Johnson,* 230 F.3d 733, 755 (5th Cir. 2000); *Barrientes v. Johnson,* 221 F.3d 741, 753 (5th Cir. 2000). A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Barrientes,* 221 F.3d at 753 (quoting *Foy v. Donnelly,* 959 F.2d 1307, 1317 (5th Cir. 1992)). A prosecutor's improper conduct will, in itself, exceed constitutional limitations in only the most egregious cases. *Ortega v. McCotter,* 808 F.2d 406, 410-11 (5th Cir. 1987).

Townsend has not shown that the state courts' rejection of his claims is contrary to or an unreasonable application of clearly established federal on the issues. Moreover, any alleged misconduct of was harmless in light of the overwhelming evidence of Townsend's guilt. *See United States v. Hasting,* 461 U.S. 499, 511-12 (1983).

*6. No Evidence*

Townsend claims there was no evidence to sustain his conviction for attempted capital murder. A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319. When faced with a record of historical facts that supports conflicting inferences, courts must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *Id.* at 326. Further, under *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo,* 513 U.S. 298, 330 (1995). Determining the weight and credibility of the evidence is within the sole province of the jury. *United States v. Martinez,* 975 F.2d 159, 161 (5th Cir. 1992). Courts view any required credibility determinations in the light most favorable to the guilty verdict. *United States v. Wise,* 221 F.3d 140, 154 (5th Cir. 2000). They do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999).

In Texas, a person commits capital murder if he intentionally or knowingly causes the death of a peace officer who is acting in the lawful discharge of an official duty and who the person knows is a peace officer. TEX. PENAL CODE ANN. § 19.03(a)(1) (Vernon Supp. 2008) A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an

9

individual. *Id.* § 19.02(b)(1)-(2) (Vernon 2003). A person commits an offense, if with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. *Id.* § 15.01(a). Thus, a person commits attempted capital murder if, with the specific intent to intentionally cause the death of a peace officer, he does some act amounting to more than mere preparation to commit capital murder that tends, but fails, to effect the commission of the offense.

Under state law, the specific intent to kill may be inferred from the use of a deadly weapon in a deadly manner; further, that inference is virtually conclusive on the issue of the defendant's intent to kill. *See Garcia v. Texas*, 887 S.W.2d 862, 869 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1021 (1995); *Flanagan v. Texas*, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984). State law does not allow evidence of voluntary intoxication to negate a specific intent. *See Hawkins v. Texas*, 605 S.W.2d 586, 589 (Tex. Crim. App. 1980) (holding evidence of intoxication could not "negate the elements of intent or knowledge" for a general intent crime).

From the evidence presented at trial, a rational jury could have found all essential elements of attempted capital murder beyond a reasonable doubt.

### 7. *Ineffective Assistance of Counsel*

Townsend claims his trial attorney provided ineffective assistance of counsel by failing to locate and interview Sheila Harris, an eyewitness to some of the events on the night in question, as a possible defense witness and to consult with DNA or ballistics experts for the defense. He claims counsel was ineffective during the punishment phase by failing to investigate and present mitigating evidence of his difficult background and psychological/mental background. (Pet'r Memorandum in Support at 17-22)

To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's

10

deficient performance the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Given the overwhelming evidence of guilt presented in this case, there is no reasonable probability that but for counsel's alleged acts or omissions the outcome of Townsend's trial would have been different or that his sentence would have been less harsh. Townsend's claims fail the second prong of Strickland.

## II. RECOMMENDATION

Townsend has failed to satisfy the legal standard for habeas corpus relief set forth above, and his petition for writ of habeas corpus should be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file, not merely place in the mail, specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until February 23, 2009. Failure to file specific written objections within the specified time shall bar a de novo determination by the district court of any finding of fact or conclusion of law and shall bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until February 23, 2009, to serve and file, not merely place in the mail, written objections to the United States Magistrate

11

Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 2, 2009.

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE